**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| HEAVY, INC.,<br>Plaintiff,<br>v.<br>HEAVY GLOBAL INC.<br>Defendant. | **CASE NO.**<br>**Jury Demand** |

## COMPLAINT

Plaintiff Heavy, Inc. ("Heavy"), by and through the undersigned counsel, hereby files its Complaint against Defendant Heavy Global Inc. ("Heavy Global") and alleges:

## NATURE OF THE ACTION

1. Heavy has traded under the name HEAVY since 1999 and has held incontestable federal registrations for the mark since 2006. In late 2024, Heavy Global incorporated and began selling entertainment services as "HEAVY."—styled the very same way, in all-caps, black lettering, and often (though not always) with a small period after it. Consumers are already confused. Heavy demanded that Heavy Global stop. Heavy Global refused.

2. Heavy is a global media company. Since 1999, it has provided entertainment coverage and commentary, organized live events and national tours, and produced custom content and marketing campaigns for Fortune 500 companies. Heavy's website is now the largest independent sports destination in the United States with 15 million monthly visitors, 7.3 million email subscribers, and 4.5 million social media followers.

3. Heavy brands and offers its goods and services under incontestable federal trademarks for "HEAVY," which were registered in October 2006 and cover both "[p]rerecorded

audio and video recordings" and various "[e]ntertainment services." Heavy also owns longstanding common law rights in those trademarks for additional goods and services.

4. Heavy Global's use of HEAVY is already causing consumer confusion as to the source of its goods and services—consumers expect media and entertainment brands to produce live events and provide marketing services, too, as Heavy long has done.

5. Heavy Global has willfully continued its infringement despite longstanding awareness of Heavy's trademarks and despite the U.S. Patent and Trademark Office's acceptance of Heavy's letter of protest against Heavy Global's applications, which cites Heavy's prior marks.

6. Heavy Global's own website calls itself "Heavy Inc." in its privacy policy. Whether that is an intentional effort to exploit Heavy's goodwill or a mistake born of confusion and negligence, it underscores Heavy Global's misconduct.

7. Left alone, Heavy Global will keep going—irreparably harming Heavy, its trademarks, and the goodwill they embody, and deceiving consumers. Heavy asks this Court to stop Heavy Global from infringing, competing unfairly, and otherwise harming Heavy and its trademarks, and to award monetary damages, treble and punitive damages, and attorneys' fees.

## THE PARTIES

8. Heavy is a Nevada corporation with its registered office located at 732 S 6th Street, Suite N, Las Vegas, NV 89101. Heavy owns the trademark rights asserted in this action.

9. Upon information and belief, Heavy Global is a Delaware corporation with its registered agent located at 8 The Green, Ste R, Dover, DE 19901.

## JURISDICTION AND VENUE

10. This action arises under the trademark and unfair competition law of the United States, 15 U.S.C. § 1051, *et seq.*, and under the statutory and common law unfair competition and trademark laws of the States of Delaware and Florida. This Court has subject-matter jurisdiction

at least under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a) and (b) because this action arises under federal trademark law. The state-law claims form part of the same case or controversy because they arise from the same nucleus of operative facts as the federal claims, and this Court has supplemental jurisdiction over them pursuant to 28 U.S.C. § 1367.

11. The Court has general personal jurisdiction over Heavy Global because, upon information and belief, it is incorporated in Delaware.

12. Venue is proper under 28 U.S.C. § 1391(b) and (c) because Heavy Global resides in this District, and because the Court has personal jurisdiction over Heavy Global in this District.

## FACTUAL BACKGROUND

### A. Heavy and Its Rights in the Valuable and Well-Known Asserted Marks

13. In 1999, Heavy launched its website, Heavy.com, and became one of the first video-focused digital entertainment brands.

14. Heavy soon expanded into broadcast and cable and then leveraged its reputation as a global cultural icon to provide live events, packaging, brand creation, digital marketing, and advertising to Fortune 500 companies.

15. Heavy has long been a major player in the music, sports, and entertainment business. Heavy helped launch and operate Fuse, a 24-hour music cable channel for Cablevision, the owners of Madison Square Garden and Rainbow Media. It likewise produced approximately 100 episodes of an animated music comedy show called "Behind the Music That Sucks," which were licensed for national and international distribution, including through Universal Music Group, ABC Television in Australia, Comcast On Demand, and Cablevision. Heavy extended its brand further into music by launching Hipnodx (a hip-hop show later licensed in Japan), Heavy Music (licensed to Fuse), and other digital culture programs that were licensed to Warner Brothers and Universal.

16. Heavy's music industry work also included SumoSonic, a grassroots music marketing compilation distributed in partnership with major music industry labels including SonyEpic, Universal Music Group, and Warner-EMI. Heavy has also launched digital marketing campaigns and websites for global music acts like Radiohead and Nine Inch Nails.

17. Heavy similarly has a long history with live events. For instance, it produced "Sneaker Pimps," the largest traveling show of customized sneakers in the world with events across ten states and sponsorship from Finish Line and Nike. Heavy's work has also included an event in Austin, Texas, during SXSW featuring the rapper Wiz Khalifa, advertiser events for companies like AT&T and Absolut, and music events associated with Heavy's work on Fuse.

18. Heavy has also been an innovator in the digital advertising and marketing space. Its founders were the first individuals in the digital industry to deliver video through an advertising banner and were recognized for their efforts by the first-ever Cannes Advertising Awards for Digital, winning the Grand Prix and two Gold Lions. For over 25 years, Heavy has worked directly with over 500 advertising clients and indirectly with thousands of others who include Heavy.com on their advertising buy lists due to the brand's strong industry recognition.

19. Heavy has been lauded in the press, including *The New York Times*, *The Wall Street Journal*, *Entertainment Weekly*, *Rolling Stone*, *Variety*, *The Hollywood Reporter*, *Advertising Age*, *AdWeek*, *Brandweek*, *The Age* (in Australia), and the *South China Morning Post*.

20. Heavy also distributes branded sports, entertainment, news, music, and comedy content through its website, social media, and email newsletters.

21. Heavy.com reaches a substantial audience in the United States through direct visits, search, social media, and email distribution. Heavy's name identifies its content across those channels.

22. Heavy.com is now the largest independent sports destination in the United States, with a database of 7.3 million email subscribers and 15 million visitors per month. Ten million of Heavy's monthly visitors come to Heavy.com through search engines; Heavy has had 1.8 billion branded content impressions through Google's search engine since January 2025.

23. Since January 1, 2024, the Heavy website has been visited by consumers 195 million times in the United States.

24. Since 2024, Heavy Sports content has received 368 million pageviews, Heavy's Entertainment content has received 37 million pageviews, and Heavy News has received 6 million pageviews from Google.

25. The Heavy YouTube channel, which offers both live and prerecorded content, has over 2,000 originally produced Heavy content segments—all branded with Heavy's trademarks for sports, news, entertainment, music, comedy, and reality. Since January 2024, Heavy's YouTube video content has been streamed in the aggregate for 17,140 hours.

26. Heavy's content is also distributed through Facebook to Heavy's 4.5 million followers. Heavy has received 2.1 billion branded content impressions on Facebook generating 138 million views of Heavy content from Facebook.

27. Heavy also distributes its content daily to a database of 7.3 million email subscribers in the United States.

28. Through consistent use of its trademarks, and investment of millions of dollars into its HEAVY brand, Heavy has developed a significant and valuable reputation.

29. Heavy is the owner of the rights, titles, and interest in and to the following trademarks registered on the Principal Register of the U.S. Patent and Trademark Office (the "Registered Heavy Marks"):

| **Trademark** | **App. No.** | **App. Date** | **Reg. No.** | **Reg. Date** | **Classes / Goods and Services** | **Date of First Use** |
|---|---|---|---|---|---|---|
| HEAVY | 78585429 | Mar. 11, 2005 | 3,156,487 | Oct. 17, 2006 | 9: Prerecorded audio and video recordings featuring music, comedy, and entertainment | As early as September 1, 1999 |
| HEAVY | 78585290 | Mar. 11, 2005 | 3,150,598 | Oct. 3, 2006 | 41: Entertainment services, namely providing computer games, music and film libraries that may be accessed network-wide by Internet users; providing an on-line magazine in the field of entertainment; providing television and radio programs in the fields of variety, comedy, drama, game shows, reality shows, news, news commentary, weather, sports and music via the Internet, television and radio | As early as September 1, 1999 |

30. These marks are valid, subsisting, unrevoked, uncancelled, and in full force and effect. True and correct copies of Heavy's U.S. Registration Certificates and the U.S. Patent and Trademark Office title and status for the Registered Heavy Marks are attached hereto as **Exhibit 1**.

31. Pursuant to 15 U.S.C. § 1065, the Registered Heavy Marks are both incontestable. The registrations constitute *prima facie* evidence of the validity of the Registered Heavy Marks and Heavy's ownership of and exclusive right to use those marks.

32. As the result of its widespread and continuous use of HEAVY to identify its goods and services, Heavy also owns longstanding common law rights in and to that mark for use in connection with a wide array of other goods and services, including music and entertainment services; music and entertainment programming; production management; event management; technical event production; event site operations and logistics; advertising and marketing services; digital marketing services; advertising agency services; brand strategy and brand development services; media planning and media buying services; production and dissemination of advertising and promotional materials; marketing services provided to brands, agencies, and digital platforms; consulting services in the field of advertising, marketing and brand development; development and execution of marketing campaigns; data-driven marketing and audience analytics services; business services relating to the promotion and commercialization of digital content; and business services relating to online platforms and digital media. The Registered Heavy Marks and Heavy's protectable common law rights in HEAVY are referred to collectively as the "Asserted Heavy Marks."

33. To that end, Heavy owns a pending U.S. federal trademark application for HEAVY, filed May 21, 2026, for Classes 35, 38, and 42 Goods and Services. It bears the application number 99837221. The U.S. Patent and Trademark Office title and status for this application is attached hereto as **Exhibit 2**.

34. Heavy has expended substantial time, money, and resources on marketing, advertising, and promoting its goods and services under the Asserted Heavy Marks through earned and paid media, its website, social media, content distribution, advertiser relationships, and events, including over three million dollars in the last three years.

35. Heavy offers its goods and services under the Asserted Heavy Marks through its website, YouTube channel, social media accounts, sales team, and brand and agency partners.

36. The Asserted Heavy Marks are distinctive to both the consuming public and Heavy's trade.

37. Since at least as early as the first use dates indicated herein, and prior to any first use dates by Heavy Global, Heavy has continuously used in commerce, and intends to continue to use, preserve, and maintain, the Asserted Heavy Marks, in interstate U.S. commerce in connection with the promotion, marketing, advertising, offering for sale, distribution, and sales of sports and entertainment services and products, and of prerecorded audio and video recordings featuring music, comedy, and entertainment.

38. Since at least as early as the first use dates indicated herein, and prior to any first use dates by Heavy Global, Heavy has continuously used in commerce, and intends to continue to use, preserve, and maintain, the Asserted Heavy Marks, in interstate U.S. commerce in connection with the promotion, marketing, advertising, offering for sale, distribution, and sales of live events and music; advertising and marketing services; digital marketing services; advertising agency services; brand strategy and brand development services; media planning and media buying services; production and dissemination of advertising and promotional materials; marketing services provided to brands, agencies and digital platforms; consulting services in the field of advertising, marketing, and brand development; development and execution of marketing campaigns; data-driven marketing and audience analytics services; business services relating to the promotion and commercialization of digital content; and business services relating to online platforms and digital media.

39. Examples of Heavy's use of the Asserted Heavy Marks in commerce in connection with the promotion, marketing, advertising, offering for sale, distribution, and sales of Heavy's various goods and services are displayed below and attached as **Exhibit 3**. Heavy has used a period (.) after its name for approximately eight years.

40. As a result of Heavy's expenditures and efforts, the Asserted Heavy Marks have come to signify the high quality of its sports and entertainment content and live events, and have acquired incalculable distinction, reputation, and goodwill belonging exclusively to Heavy.

**B. Heavy Global and Its Infringing and Unlawful Conduct**

41. Heavy recently became aware of Heavy Global shortly after it filed a trademark application for "HEAVY.", bearing the application number 79442261, on October 24, 2025. That application seeks registration in classes 35, 41, and 42—one of which (41) is covered by Heavy's registered mark, and the others of which (35 and 42) are covered by Heavy's pending application.

42. Heavy Global reached out to Heavy seeking a consent agreement. Given the parties' current provision of similar goods and services, Heavy Global's apparent ambition to expand

beyond music event production into the media, sports, and entertainment space at large, and the resulting likelihood of consumer confusion, Heavy declined. This outreach marks the latest possible time by which Heavy Global was on notice of Heavy's rights.

43. Instead, Heavy filed a Letter of Protest ("LOP") Memorandum with the U.S. Patent and Trademark Office on April 20, 2026. Then, on May 28, 2026, the Office of the Deputy Commissioner for Trademark Examination Policy found that Heavy's evidence is "relevant to" "[l]ikelihood of confusion under Trademark Act Section 2(d) with U.S. Registration Nos. 3150598 and 3156487 (both 'HEAVY')." Heavy's LOP and the response thereto are attached as **Exhibits 4 and 5**. Heavy Global's applications have not been granted.

44. Without Heavy's authorization, and despite Heavy's longstanding use of and immense goodwill in the Heavy brand and Asserted Heavy Marks, Heavy Global adopted and began using "Heavy" as a brand name for its goods and services. Heavy Global's use includes the names HEAVY and HEAVY., the logo , the website heavy.global, and other uses of the word "heavy" in Heavy Global's name and brand (collectively, the "Infringing Heavy Marks"), including online, at events, and via digital and physical marketing.

45. The occasional addition of the geographic descriptor "Global" to HEAVY, if used as a substitute source identifier for the same services, does not adequately distinguish the source and would remain likely to suggest a global division or affiliate of Heavy.

46. Upon information and belief, Heavy Global uses the Infringing Heavy Marks for a variety of goods and services, including prerecorded audio and video recordings, music and entertainment services, music and entertainment programming, production management, event management, technical event production, event site operations and logistics, advertising and marketing services, production and dissemination of advertising and promotional materials,

advertising agency services, and marketing services provided to brands and artists (the "Infringing Goods and Services").

47. Upon information and belief, Heavy Global intends to use the Infringing Heavy Marks to continue expanding its offerings beyond event production and into media, entertainment, and music more generally. Heavy Global regularly touts its collaborations and relationships with major artists like John Summit on social media and its website.

48. Upon information and belief, Heavy Global has been engaged in the advertising, promotion, offering for sale, and the sale of the Infringing Goods and Services using the Infringing Heavy Marks throughout the U.S.

49. As just several examples, Heavy Global has touted its role in organizing the closing party at Miami Music Week in March 2026, Ultra Music Festival in Miami in March 2026, and III Points Music Festival in Miami in 2024. All of these events took place in Florida.

50. Heavy Global's use of the Infringing Heavy Marks in its Infringing Goods and Services is virtually identical to Heavy's use of the Asserted Heavy Marks. Both use the same word ("heavy"), employ all-caps, frequently add a period (.) after "HEAVY," and employ black as the primary color. For example, the following images appear on Heavy Global's website and social media pages (displayed below and attached as **Exhibit 6**):


heavy.global
HEAVY.
1
Liked by glitchjunkiemedia and others
heavy.global Technical Production Stage Design Event Management Touring & Logistics
April 8, 2024


heavy.global
HEAVY
45 posts
8,410 followers
1,256 following
A Global Team of Live Entertainment Experts
Event & Production Management
Production Design
Touring & Logistics
heavy.global


HEAVY




51. Heavy's and Heavy Global's goods and services overlap and compete. Both provide music and entertainment services and promote live and prerecorded events and music. And Heavy Global's pending trademark applications name classes of goods and services that are also named in Heavy's registered marks and pending trademark applications.

52. Confusion is therefore likely because Heavy's goods and services and Heavy Global's Infringing Goods and Services are, or are likely to be, marketed, advertised, offered for sale, and sold to the same, similar, or related prospective consumers and through the same, similar, or related channels of trade. Heavy's history of entertainment production, music programming, advertiser campaigns, and live events makes it plausible that purchasers would regard Heavy Global's branded event-production services as a division, affiliate, or sponsored activity of Heavy.

53. The parties promote their services through websites, social media, entertainment content, and business relationships with artists, brands, advertisers, agencies, and event participants. Those channels and customers overlap or are commercially related, increasing the likelihood of confusion as to source, sponsorship, or affiliation.

54. Consumers are accustomed to media and entertainment brands also producing live events and providing marketing services, as Heavy's own history of launching music channels, holding music events, selling those events to advertisers, making content from those events, and distributing that content demonstrates. This market convergence increases the likelihood that consumers will be confused as to the source, sponsorship, affiliation, or connection of Heavy Global's Infringing Goods and Services.

55. As just one example of likely confusion, the electronic dance music artist John Summit credited "HEAVY" for "Production Management" on his YouTube video "JOHN SUMMIT LIVE @ LOLLAPALOOZA CHICAGO 2026." As of October 5, 2026, that video has received 1,318,858 views. A screen capture is attached as **Exhibit 7**.

56. Heavy Global has perpetuated this confusion and created a false association between Heavy and Heavy Global by referring to itself as "Heavy Inc." in the privacy policy on its website, heavy.global (displayed below and attached as **Exhibit 8**):



YOU MAY ACCESS THEPERSONAL INFORMATION WE HOLD ABOUT YOU AND TO UPDATE AND/OR CORRECT IT, SUBJECTTO CERTAIN EXCEPTIONS. IF YOU WISH TO ACCESS YOUR PERSONAL INFORMATION, PLEASECONTACT US IN WRITING.
**HEAVY INC** WILL NOT CHARGE ANY FEE FOR YOUR ACCESSREQUEST, BUT MAY CHARGE AN ADMINISTRATIVE FEE FOR PROVIDING A COPY OF YOURPERSONAL INFORMATION.
IN ORDER TO PROTECTYOUR PERSONAL INFORMATION WE MAY REQUIRE IDENTIFICATION FROM YOU BEFORERELEASING THE REQUESTED INFORMATION.
MAINTAINING THE QUALITY OF YOUR PERSONAL INFORMATION
IT IS AN IMPORTANTTO US THAT YOUR PERSONAL INFORMATION IS UP TO DATE. WE WILL TAKE REASONABLE STEPS TO MAKE SURE THAT YOUR PERSONAL INFORMATION ISACCURATE, COMPLETE AND UP-TO-DATE. IF YOU FIND THAT THE INFORMATION WE HAVE ISNOT UP TO DATE OR IS INACCURATE, PLEASE ADVISE US AS SOON AS PRACTICABLE SO WECAN UPDATE OUR RECORDS AND ENSURE WE CAN CONTINUE TO PROVIDE QUALITY SERVICESTO YOU.
POLICY UPDATES
THIS POLICY MAYCHANGE FROM TIME TO TIME AND IS AVAILABLE ON OUR WEBSITE.
PRIVACY POLICY COMPLAINTS AND ENQUIRIES
IF YOU HAVE ANYQUERIES OR COMPLAINTS ABOUT OUR PRIVACY POLICY PLEASE CONTACT US AT:

**ASHER@HEAVY.GLOBAL**

**HEAVY INC**

57. Heavy Global began using the Infringing Heavy Marks after Heavy began using the Asserted Heavy Marks and after Heavy began using one or more of its Asserted Heavy Marks to provide music and entertainment services and promote live events and music. Indeed, Heavy Global was not even formed or actively providing goods and services until 2024. As a result, Heavy has priority over Heavy Global through one or both of the following facts: (1) by virtue of Heavy's earlier first use in commerce date for one or more of the Asserted Heavy Marks; or (2) by virtue of Heavy's constructive first use dates over Heavy Global pursuant to 15 U.S.C. § 1057(c).

58. On information and belief, Heavy Global began offering its Infringing Goods and Services willfully and in a conscious effort to trade on the substantial goodwill represented by the Asserted Heavy Marks and to cause confusion and deception in the marketplace. Indeed, Heavy Global has refused to cease its use of the Infringing Heavy Marks despite the U.S. Patent and Trademark Office's acceptance of Heavy's LOP Memorandum.

59. In sum, Heavy Global adopted and continued using the Infringing Heavy Marks with (1) constructive notice of Heavy's registrations; (2) actual knowledge of Heavy's rights, as evidenced by Heavy Global's request for a consent agreement, Heavy's LOP, and Heavy's April 27, 2026 cease-and-desist letter; and (3) the intent to call Heavy to mind, as shown by Heavy Global's self-reference as "Heavy Inc."

60. On or around April 27, 2026, counsel for Heavy sent a cease-and-desist letter to Heavy Global, demanding that it discontinue all use of the Infringing Heavy Marks and abandon

all pending trademark applications for HEAVY and similar terms. Heavy Global did not retain U.S. counsel to respond. Instead, its Australian counsel sent a response, and the parties attempted to find common ground. However, Heavy Global refused to commit to remaining in music event production and indicated plans to expand into the provision of goods and services that would create even more overlap with Heavy, like sports event production. Accordingly, as of this filing, and despite Heavy's numerous cease-and-desist demands, Heavy Global continues to promote, advertise, market, offer for sale, and sell the Infringing Goods and Services under the Infringing Heavy Marks.

61. Heavy has been harmed by Heavy Global, including because Heavy Global's infringing conduct has diminished the value of the Asserted Heavy Marks, has confused customers, and has caused irreparable damage to Heavy's goodwill.

62. Heavy Global's conduct has caused Heavy irreparable injury to its business. Heavy has lost control over the reputation and quality associated with its marks, and will suffer substantial loss of goodwill and reputation unless Heavy Global is permanently enjoined from the wrongful acts complained of herein. Heavy is entitled to a rebuttable presumption of irreparable harm under 15 U.S.C. § 1116(a).

**COUNT I**
**(Lanham Act Infringement (15 U.S.C. § 1114))**

63. Heavy repeats and incorporates by reference each and every foregoing paragraph of this Complaint as if fully set forth herein.

64. Heavy owns all rights, titles, and interest in and to the Registered Heavy Marks, which are valid, subsisting, unrevoked, uncancelled, incontestable, and in full force and effect.

65. Heavy has priority over Heavy Global in the Registered Heavy Marks in connection with an array of music and entertainment-related goods and services, including prerecorded audio

and video recordings and various entertainment services, by virtue of either Heavy's earlier first use in commerce or Heavy's earlier constructive first use.

66. Heavy Global's use of the Infringing Heavy Marks in commerce is likely to cause, or has actually caused, confusion, mistake, and deception among consumers with respect to the source, origin, sponsorship, or affiliation of Heavy Global's goods and services, because Heavy Global's Infringing Heavy Marks and Heavy's Registered Heavy Marks are identical or otherwise confusingly similar and used in similar manners and in connection with identical, similar, and/or related goods and services that are marketed, advertised, and promoted to identical, similar, and/or related target consumers.

67. Heavy Global's domestic use of the Infringing Heavy Marks constitutes trademark infringement of the Registered Heavy Marks in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

68. Upon information and belief, Heavy Global's infringement was willful, deliberate, and conducted in bad faith with the intent to cause confusion and mistake among consumers with respect to the source, origin, sponsorship, or affiliation of its goods and services, and to trade on Heavy's goodwill.

69. Indeed, Heavy Global has committed the foregoing acts of infringement with full knowledge of Heavy's prior rights in the Registered Heavy Marks, and with full knowledge that Heavy Global's trademark applications have not been granted and that Heavy's LOP Memorandum was accepted by the U.S. Patent and Trademark Office. Moreover, Heavy Global's own privacy policy refers to itself as "Heavy Inc.," furthering this deliberate effort to create confusion.

70. Heavy Global's conduct is causing immediate and irreparable harm and injury to Heavy, and to Heavy's goodwill and reputation, and will continue to damage Heavy and confuse the public unless enjoined by this Court. Heavy has no adequate remedy at law.

71. Upon information and belief, Heavy Global has received substantial revenues and profits as a result of its unlawful conduct, to which Heavy is entitled, and Heavy has also suffered damages as a result of such unlawful conduct, for which Heavy Global is responsible.

72. This is an exceptional case under 15 U.S.C. § 1117(a), and Heavy is entitled to recover its reasonable attorneys' fees.

73. Heavy is entitled to, among other relief, a permanent injunction and an award of actual damages, Heavy Global's profits, treble damages, damages sustained by Heavy proven to have been caused by Heavy Global's conduct, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116 and 1117, together with prejudgment and post-judgment interest, and any other remedies that the Court may deem just and proper, including enhanced damages due to Heavy Global's willful infringement.

## COUNT II
**(Lanham Act Unfair Competition and False Designation of Origin (15 U.S.C. § 1125(a)))**

74. Heavy repeats and incorporates by reference each and every foregoing paragraph of this Complaint as if fully set forth herein.

75. Heavy owns all rights, titles, and interest in and to the Asserted Heavy Marks, which are valid, subsisting, unrevoked, uncancelled, and in full force and effect.

76. Heavy has priority over Heavy Global in the Asserted Heavy Marks, whether registered or unregistered, in connection with an array of music and entertainment-related goods and services.

77. Heavy has used in commerce and continues to use in commerce the Asserted Heavy Marks in connection with an array of music and entertainment-related goods and services.

78. The Asserted Heavy Marks are valid, distinctive, inherently distinctive, have acquired additional secondary meaning as source indicators for Heavy and its goods and services, and are protectable.

79. Heavy Global's unauthorized use of the Infringing Heavy Marks in commerce is likely to cause, or has actually caused, confusion, mistake, and deception among consumers with respect to the source, origin, sponsorship, or affiliation of Heavy Global's goods and services, because Heavy Global's Infringing Heavy Marks and Heavy's Asserted Heavy Marks are identical or otherwise confusingly similar and used in similar manners and in connection with identical, similar, and/or related goods and services that are marketed, advertised, and promoted to identical, similar, and/or related target consumers.

80. Heavy Global's use of the Infringing Heavy Marks constitutes trademark infringement of the Asserted Heavy Marks and unfair competition in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(a).

81. Upon information and belief, Heavy Global's infringement was willful, deliberate, and conducted in bad faith with the intent to cause confusion and mistake among consumers with respect to the source, origin, sponsorship, or affiliation of its goods and services, and to trade on Heavy's goodwill.

82. Indeed, Heavy Global has committed the foregoing acts of infringement with full knowledge of Heavy's prior rights in the Asserted Heavy Marks, and with full knowledge that Heavy Global's trademark applications have not been granted and that Heavy's LOP Memorandum

was accepted by the U.S. Patent and Trademark Office. Moreover, Heavy Global's own privacy policy refers to itself as "Heavy Inc.," furthering this deliberate effort to create confusion.

83. Heavy Global's conduct is causing immediate and irreparable harm and injury to Heavy, and to Heavy's goodwill and reputation, and will continue to damage Heavy and confuse the public unless enjoined by this Court. Heavy has no adequate remedy at law.

84. Upon information and belief, Heavy Global has received substantial revenues and profits as a result of its unlawful conduct, to which Heavy is entitled, and Heavy has also suffered damages as a result of such unlawful conduct, for which Heavy Global is responsible.

85. Heavy is entitled to, among other relief, a permanent injunction and an award of actual damages, Heavy Global's profits, treble damages, damages sustained by Heavy proven to have been caused by Heavy Global's conduct, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116 and 1117, together with prejudgment and post-judgment interest, and any other remedies that the Court may deem just and proper, including enhanced damages due to Heavy Global's willful infringement.

**COUNT III**
**(Common Law Trademark Infringement)**

86. Heavy repeats and incorporates by reference each and every foregoing paragraph of this Complaint as if fully set forth herein.

87. Heavy owns all rights, titles, and interest in and to the Asserted Heavy Marks, which are valid, subsisting, unrevoked, uncancelled, and in full force and effect.

88. Heavy has priority over Heavy Global in the Asserted Heavy Marks, whether registered or unregistered, in connection with an array of music and entertainment-related goods and services.

89. Heavy has used in commerce and continues to use in commerce the Asserted Heavy Marks in connection with an array of music and entertainment-related goods and services.

90. The Asserted Heavy Marks are valid, distinctive, inherently distinctive, have acquired additional secondary meaning as source indicators for Heavy and its goods and services, and are protectable.

91. Heavy Global's unauthorized use of the Infringing Heavy Marks in commerce is likely to cause, or has actually caused, confusion, mistake, and deception among consumers with respect to the source, origin, sponsorship, or affiliation of Heavy Global's goods and services, because Heavy Global's Infringing Heavy Marks and Heavy's Asserted Heavy Marks are identical or otherwise confusingly similar and used in similar manners and in connection with identical, similar, and/or related goods and services that are marketed, advertised, and promoted to identical, similar, and/or related target consumers.

92. Heavy Global's use of the Infringing Heavy Marks constitutes trademark infringement of the Asserted Heavy Marks.

93. Upon information and belief, Heavy Global's infringement was willful, wanton, malicious, outrageous, deliberate, and conducted with reckless indifference to Heavy's rights and in bad faith with the intent to cause confusion and mistake among consumers with respect to the source, origin, sponsorship, or affiliation of its goods and services, and to trade on Heavy's goodwill.

94. Indeed, Heavy Global has committed the foregoing acts of infringement with full knowledge of Heavy's prior rights in the Asserted Heavy Marks, and with full knowledge that Heavy Global's trademark applications have not been granted and that Heavy's LOP Memorandum

was accepted by the U.S. Patent and Trademark Office. Moreover, Heavy Global's own privacy policy refers to itself as "Heavy Inc.," furthering this deliberate effort to create confusion.

95. Heavy Global's conduct is causing immediate and irreparable harm and injury to Heavy, and to Heavy's goodwill and reputation, and will continue to damage Heavy and confuse the public unless enjoined by this Court. Heavy has no adequate remedy at law.

96. Upon information and belief, Heavy Global has received substantial revenues and profits as a result of its unlawful conduct, to which Heavy is entitled, and Heavy has also suffered damages as a result of such unlawful conduct, for which Heavy Global is responsible.

97. Heavy is entitled to, among other relief, a permanent injunction and an award of actual damages, Heavy Global's profits, punitive damages as the result of Heavy Global's intentional misconduct and/or gross negligence, damages sustained by Heavy proven to have been caused by Heavy Global's conduct, reasonable attorneys' fees, and costs of the action, together with prejudgment and post-judgment interest, and any other remedies that the Court may deem just and proper.

## COUNT IV
## (Violation of Delaware Deceptive Trade Practices Act)

98. Heavy repeats and incorporates by reference each and every foregoing paragraph of this Complaint as if fully set forth herein.

99. Heavy owns all rights, titles, and interest in and to the Asserted Heavy Marks, which are valid, subsisting, unrevoked, uncancelled, and in full force and effect.

100. Heavy has priority over Heavy Global in the Asserted Heavy Marks, whether registered or unregistered, in connection with an array of music and entertainment-related goods and services.

101. Heavy has used in commerce and continues to use in commerce the Asserted Heavy Marks in connection with an array of music and entertainment-related goods and services.

102. The Asserted Heavy Marks are valid, distinctive, inherently distinctive, have acquired additional secondary meaning as source indicators for Heavy and its goods and services, and are protectable.

103. Heavy Global's unauthorized use of the Infringing Heavy Marks in commerce is likely to cause, or has actually caused, confusion, mistake, and deception among consumers with respect to the source, origin, sponsorship, or affiliation of Heavy Global's goods and services, because Heavy Global's Infringing Heavy Marks and Heavy's Asserted Heavy Marks are identical or otherwise confusingly similar and used in similar manners and in connection with identical, similar, and/or related goods and services that are marketed, advertised, and promoted to identical, similar, and/or related target consumers.

104. Heavy Global's use of the Infringing Heavy Marks constitutes trademark infringement of the Asserted Heavy Marks in violation of Delaware law and constitutes a deceptive practice in violation of Del. Code Ann. tit. 6, § 2532 (West).

105. Upon information and belief, Heavy Global's infringement was willful, unfair, unconscionable, deceptive, deliberate, and conducted in bad faith with the intent to cause confusion and mistake among consumers with respect to the source, origin, sponsorship, or affiliation of its goods and services, and to trade on Heavy's goodwill.

106. Indeed, Heavy Global has committed the foregoing acts of infringement with full knowledge of Heavy's prior rights in the Asserted Heavy Marks, and with full knowledge that Heavy Global's trademark applications have not been granted and that Heavy's LOP Memorandum

was accepted by the U.S. Patent and Trademark Office. Moreover, Heavy Global's own privacy policy refers to itself as "Heavy Inc.," furthering this deliberate effort to create confusion.

107. Heavy Global's conduct is causing immediate and irreparable harm and injury to Heavy, and to Heavy's goodwill and reputation, and will continue to damage Heavy and confuse the public unless enjoined by this Court. Heavy has no adequate remedy at law.

108. Upon information and belief, Heavy Global has received substantial revenues and profits as a result of its unlawful conduct, to which Heavy is entitled, and Heavy has also suffered damages as a result of such unlawful conduct, for which Heavy Global is responsible.

109. This is an exceptional case, and Heavy is entitled to recover its reasonable attorneys' fees.

110. Heavy is entitled to, among other relief, a permanent injunction and an award of actual damages, Heavy Global's profits, treble damages, damages sustained by Heavy proven to have been caused by Heavy Global's conduct, reasonable attorneys' fees, and costs of the action, together with prejudgment and post-judgment interest, and any other remedies that the Court may deem just and proper.

**COUNT V**
**(Violation of Florida Deceptive and Unfair Trade Practices Act (FDUTPA), Fla. Stat. § 501.201 *et seq.*)**

111. Heavy repeats and incorporates by reference each and every foregoing paragraph of this Complaint as if fully set forth herein.

112. Heavy owns all rights, titles, and interest in and to the Asserted Heavy Marks, which are valid, subsisting, unrevoked, uncancelled, and in full force and effect.

113. Heavy has priority over Heavy Global in the Asserted Heavy Marks, whether registered or unregistered, in connection with an array of music and entertainment-related goods and services.

114. Heavy has used in commerce and continues to use in commerce the Asserted Heavy Marks in connection with an array of music and entertainment-related goods and services.

115. The Asserted Heavy Marks are valid, distinctive, inherently distinctive, have acquired additional secondary meaning as source indicators for Heavy and its goods and services, and are protectable.

116. Heavy Global's unauthorized use of the Infringing Heavy Marks in commerce in Florida is likely to cause, or has actually caused, confusion, mistake, and deception among consumers with respect to the source, origin, sponsorship, or affiliation of Heavy Global's goods and services, because Heavy Global's Infringing Heavy Marks and Heavy's Asserted Heavy Marks are identical or otherwise confusingly similar and used in similar manners and in connection with identical, similar, and/or related goods and services that are marketed, advertised, and promoted to identical, similar, and/or related target consumers.

117. Heavy Global's use of the Infringing Heavy Marks constitutes trademark infringement of the Asserted Heavy Marks in violation of Florida law and constitutes a deceptive and unfair trade practice in violation of Fla. Stat. § 501.201 *et seq.*

118. Upon information and belief, Heavy Global's infringement was willful, unfair, unconscionable, deceptive, deliberate, and conducted in bad faith with the intent to cause confusion and mistake among consumers with respect to the source, origin, sponsorship, or affiliation of its goods and services, and to trade on Heavy's goodwill.

119. Indeed, Heavy Global has committed the foregoing acts of infringement with full knowledge of Heavy's prior rights in the Asserted Heavy Marks, and with full knowledge that Heavy Global's trademark applications have not been granted and that Heavy's LOP Memorandum

was accepted by the U.S. Patent and Trademark Office. Moreover, Heavy Global's own privacy policy refers to itself as "Heavy Inc.," furthering this deliberate effort to create confusion.

120. Heavy Global's conduct is causing immediate and irreparable harm and injury to Heavy, and to Heavy's goodwill and reputation, and will continue to damage Heavy and confuse the public unless enjoined by this court. Heavy has no adequate remedy at law.

121. Upon information and belief, Heavy Global has received substantial revenues and profits as a result of its unlawful conduct, to which Heavy is entitled, and Heavy has also suffered damages as a result of such unlawful conduct, for which Heavy Global is responsible.

122. Heavy is entitled to, among other relief, a permanent injunction and an award of actual damages, Heavy Global's profits, damages sustained by Heavy proven to have been caused by Heavy Global's conduct, reasonable attorneys' fees, and costs of the action, together with prejudgment and post-judgment interest, and any other remedies that the Court may deem just and proper.

**COUNT VI**
**(Lanham Act False Advertising (15 U.S.C. § 1125(a)(1)(B)))**

123. Heavy repeats and incorporates by reference each and every foregoing paragraph of this Complaint as if fully set forth herein.

124. By referring to itself as "Heavy Inc." on its website, Heavy Global made a false representation of fact in interstate commerce in connection with its provision of goods and services.

125. The description misrepresents Heavy Global's goods, services, and commercial activities by creating a false association with Heavy's goods, services, and commercial activities.

126. Heavy has been damaged by this false association.

127. On information and belief, Heavy Global's reference to "Heavy Inc." was intentional or at least grossly negligent.

128. Heavy is therefore entitled to, among other relief, an award of actual damages, damages sustained by Heavy proven to have been caused by Heavy Global's conduct, reasonable attorneys' fees, and costs of the action, together with prejudgment and post-judgment interest, and any other remedies that the Court may deem just and proper.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

A. Judgment finding that Heavy Global is infringing Heavy's trademark rights, competing unfairly with Heavy, falsely associating its goods and services and commercial activities with Heavy, and engaging in false and deceptive trade practices, and that Heavy Global's actions are deliberate, intentional, and willful violations of Heavy's rights in and to its trademarks, and ordering:

   a. That Heavy Global be adjudged to have willfully infringed Heavy's federal trademark rights in the Asserted Heavy Marks, with full knowledge of Heavy's rights in the trademarks conveyed by U.S. Trademark Registration Nos. 3156487 and 3150598 in violation of Lanham Act § 32(1), 15 U.S.C. § 1114(1);

   b. That Heavy Global be adjudged to have engaged in federal unfair competition, false association, and false advertising under 15 U.S.C. § 1125(a);

   c. That Heavy Global be adjudged to have engaged in trademark infringement and unfair competition under Delaware and/or Florida law;

   d. That Heavy Global be adjudged to have engaged in deceptive and unfair trade practices in violation of Del. Code Ann. tit. 6, § 2532, the Delaware Deceptive Trade Practices Act;

e. That Heavy Global be adjudged to have engaged in deceptive and unfair trade practices in violation of Fla. Stat. § 501.201 *et seq.*, the Florida Deceptive and Unfair Trade Practices Act;

B. That Heavy Global, its officers, agents, directors, employees, attorneys, and all persons and/or entities acting for, with, by, through, or in concert with it, be enjoined permanently under 15 U.S.C. § 1116 from:

a. Using the Infringing Heavy Marks (including HEAVY, HEAVY., HEAVY GLOBAL, and HEAVY.GLOBAL), or any other logo, device, word mark, or trade dress that is a colorable imitation of the Asserted Heavy Marks, or is confusingly similar to any variations of the Asserted Heavy Marks, alone or in combination with any other letters, words, letter strings, phrases, or designs of the Asserted Heavy Marks, without express authorization from Heavy;

b. Registering or trafficking in any domain names, including heavy.global, that are confusingly similar to the Asserted Heavy Marks or to Heavy's domain name;

c. Representing in any manner or by any method, that goods, services, or other products provided by Heavy Global are sponsored, approved, authorized by, or originate from Heavy, or otherwise taking any action likely to cause confusion, mistake, or deception as to the origin, approval, sponsorship, or certification of such goods or services;

d. Infringing the Asserted Heavy Marks; and

e. Competing unfairly with Heavy in any manner;

C. That Heavy Global be required to formally abandon with prejudice any and all of its applications to register any trademark consisting of, incorporating, or containing the

Asserted Heavy Marks or any counterfeit, copy, confusingly similar variation, or colorable imitation thereof (including a sound-alike version) on any state or federal trademark registry, including U.S. Application Serial No. 79442261;

D. That Heavy Global, within 30 days after service of judgment with notice of entry thereof upon it, be required to file with the Court and serve upon Heavy's attorneys a written report under oath pursuant to 15 U.S.C. § 1116(a) setting forth in detail the manner in which Heavy Global has complied with the injunctive relief ordered;

E. That Heavy Global be required to engage in corrective advertising with all vendors, sales representatives, and account managers that received products, containers, labels, packaging, wrappers, signs, prints, banners, posters, brochures, literature, catalogs, or other advertising, marketing, or promotional materials comprised of or bearing the Asserted Heavy Marks, to mitigate the damage done to Heavy's reputation and to the distinctive quality of the Asserted Heavy Marks, including the harm to the goodwill associated with the Asserted Heavy Marks, from Heavy Global's unlawful conduct;

F. That, pursuant to Sections 35 and 43 of the Lanham Act, 15 U.S.C. §§ 1117 and 1125, the common law of the State of Delaware, the common law of the State of Florida, Del. Code Ann. tit. 6, § 2532, and/or Fla. Stat. § 501.201 *et seq.*:

    a. That Heavy Global be required, pursuant to 15 U.S.C. § 1117(a), to pay Heavy the actual damages it has suffered as a result of Heavy Global's trademark infringement and unfair competition, and disgorge any profits therefrom, and that Heavy Global be required to pay Heavy three times the amount of actual damages suffered by it by virtue of the willful nature of Heavy Global's illegal acts;

b. That Heavy be awarded punitive damages under Delaware and/or Florida law;

c. That, pursuant to 15 U.S.C. § 1117(a) and Delaware and/or Florida law, the Court declare this an exceptional case and award Heavy its reasonable attorneys' fees, the full costs of this action, and interest to Heavy;

G. That Heavy Global be required to deliver up for destruction pursuant to 15 U.S.C. § 1118 all signs, banners, and promotional and marketing materials bearing the Infringing Heavy Marks;

H. That Heavy Global be required to provide an accounting of and pay over to Heavy all profits received from its use of the Infringing Heavy Marks; and

I. That the Court grant such other and further relief as is just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Heavy hereby demands a trial by jury on all issues so triable in this action.

**[*REMAINDER OF PAGE INTENTIONALLY LEFT BLANK*]**

DATED: October 7, 2026

**BENESCH, FRIEDLANDER, COPLAN & ARONOFF, LLP**

*/s/ Kate Hodges Harmon*
Kate Hodges Harmon (DE Bar #5343)
1313 N. Market Street, Suite 1201
Wilmington, Delaware 19801
(302) 442-7057
khodgesharmon@beneschlaw.com

Matthew B. Fox (*pro hac vice* forthcoming)
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
(646) 593-7050
mfox@beneschlaw.com

*Attorneys for Plaintiff Heavy, Inc.*